# EXHIBIT A

2120 - Served              2121 - Served
2220 - Not Served          2221 - Not Served
2320 - Served By Mail        2321 - Served By Mail
2420 - Served By Publication   2421 - Served By Publication

SUMMONS                ALIAS - SUMMONS       (Rev. 9/3/99)    CCG 0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

2011L001050

CALENDAR/ROOM E
TIME 00:00
PI Motor Vehicle

| | |
|---|---|
| JUSTIN ROBERSON, a minor, by and through His mother and next friend, ANGELA ROBERSON,    ) ) ) ) | |
| Plaintiff,    ) ) | Case No. |
| v.    ) ) ) | Sheriff Please Serve: Novartis Pharmaceuticals Corporation |
| NOVARTIS PHARMACEUTICALS CORPORATION, and NOVARTIS PHARMACEUTICALS CORPORATION D/B/A CIBA PHARMACEUTICALS, FORMERLY KNOWN AS SANDOZ, INC. AND/OR SANDOZ PHARMACEUTICALS CORPORATION,    ) ) ) ) ) ) ) ) ) | R/A: Illinois Corporation Service C 801 Adlai Stevenson Drive Springfield, IL 62703 |
| Defendants.    ) ) | |

### SUMMONS

To each defendant:

     **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602.

     You must file within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

| | | |
|---|---|---|
| Atty. No.: | 24797 | WITNESS,_____ |
| Name: | Timothy J. Ashe | FEB 1 0 2011 |
| Atty. for: | Plaintiff | |
| Address: | 60 W. Randolph, 4th Floor | |
| City/State/Zip: | Chicago, IL 60601 | |
| Telephone: | (312) 782-2525 | Clerk of Court |

DIMY BROWN
CF CIRCUIT COURT

Date of service: _____
(To be inserted by officer on copy left with
defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JUSTIN ROBERSON, a minor, by and through )
His mother and next friend, ANGELA ROBERSON, )
                                        )     Case No.
      Plaintiff,                           )    **2011L001050**
                                          )    **CALENDAR/ROOM E**
v.                                         )    **TIME 00:00**
                                          )    **PI Motor Vehicle**
NOVARTIS PHARMACEUTICALS )
CORPORATION, and NOVARTIS )
PHARMACEUTICALS CORPORATION )
D/B/A CIBA PHARMACEUTICALS, FORMERLY )
KNOWN AS SANDOZ, INC. AND/OR SANDOZ )
PHARMACEUTICALS CORPORATION, )
                                          )
      Defendants.                      )

## COMPLAINT

Plaintiff, by and through his undersigned attorneys, allege upon information and belief, as follows:

## PARTIES

1.      Plaintiff, JUSTIN ROBERSON, is a citizen and resident of Cook County, Illinois and was sold TRILEPTAL in Cook County, Illinois.

2.      Beginning on or after February 13, 2009 Plaintiff, JUSTIN ROBERSON, was prescribed TRILEPTAL by his prescribing physician at Mount Sinai Hospital in Cook County, Illinois. Plaintiff's pharmacy, Walgreens dispensed and thereafter Plaintiff ingested Defendants TRILEPTAL.

3.      After February 27, 2009, Plaintiff began to experience rashing and other symptoms, and presented for treatment at Comer's Children's Hospital.

4.      Plaintiff was diagnosed with Stevens Johnson Syndrome secondary to the use of Defendants drug.

1

5.    After developing said condition, the Plaintiff, JUSTIN ROBERSON, discovered that said injuries were or may have been caused by the negligent acts or omissions of the Defendants.

6.    As more particularly pled below, aforementioned Plaintiff, JUSTIN ROBERSON maintains that said drug is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

7.    Defendant NOVARTIS PHARMACEUTICALS CORPORATION, is a foreign corporation incorporated under the laws of the State of New Jersey, with its principal place of business at 59 Route 10, East Hanover, New Jersey 07936.

8.    At all times relevant herein, NOVARTIS PHARMACEUTICALS CORPORATION, was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing, TRILEPTAL drug products in the stream of commerce for use by the public, including Plaintiff.

9.    Defendant NOVARTIS PHARMACEUTICALS CORPORATION, at all times material hereto has and continues to do business in this state.

10.    The agent for service of process for Defendant NOVARTIS PHARMACEUTICALS CORPORATION is located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.    Defendant NOVARTIS PHARMACEUTICALS CORPORATION is doing business as CIBA PHARMACEUTICALS.

12.    Defendant NOVARTIS PHARMACEUTICALS CORPORATION, doing business as CIBA PHARMACEUTICALS is a foreign corporation incorporated under the laws

2

of the State of New Jersey, with its principal place of business at 59 Route 10, East Hanover, New Jersey 07936.

13.    At all times relevant herein, NOVARTIS PHARMACEUTICALS CORPORATION, doing business as CIBA PHARMACEUTICALS, was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing, TRILEPTAL drug products in the stream of commerce for use by the public, including Plaintiff

14.    Defendant NOVARTIS PHARMACEUTICALS CORPORATION, doing business as CIBA PHARMACEUTICALS, at all times material hereto has and continues to do business in this state.

15.    The agent for service of process for Defendant NOVARTIS PHARMACEUTICALS CORPORATION, doing business as CIBA PHARMACEUTICALS, is located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

16.    The Defendant NOVARTIS PHARMACEUTICALS CORPORATION was formerly known as SANDOZ INC. and/or SANDOZ PHARMACEUTICALS CORPORATION.

17.    GEIGY PHARMACEUTICALS merged with NOVARTIS PHARMACEUTICALS CORPORATION, formerly known as SANDOZ, INC. and/or SANDOZ PHARMACEUTICALS, on or about 1970.

18.    References in this Complaint to "DRUG COMPANY DEFENDANT(S)" and/or "NOVARTIS" and/or "Defendants" refer to Defendant NOVARTIS PHARMACEUTICALS CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION, doing business as CIBA PHARMACEUTICALS, and NOVARTIS PHARMACEUTICALS CORPORATION formerly known as SANDOZ INC. and/or SANDOZ PHARMACEUTICALS CORPORATION.

3

## JURISDICTION AND VENUE

19.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants, because Defendants are present in the State of Illinois such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

20.     This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

    a.  Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

    b.  Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

    c.  Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

    d.  Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

    e.  Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

21.     Defendants marketed, promoted, and sold TRILEPTAL drug products concerned in this litigation throughout the United States, including Cook County, Illinois. Additionally, the Plaintiff herein suffered injury from Defendants' TRILEPTAL drug products in Illinois. Accordingly venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

4

## STATEMENT OF FACTS

22.     Plaintiff ingested Defendants' TRILEPTAL Oral Suspension (NDC# 00078-0357-52), which is an anticonvulsant medication used to treat seizures.

23.     TRILEPTAL Oral Suspension (NDA 021285) was approved by the FDA on May 25, 2000.

24.     The active ingredient in TRILEPTAL is oxcarbazepine.

25.     Oxcarbazepine is a structural derivative of carbamazepine (brand name TEGRETOL—made by Defendants).

26.     Oxcarbazepine has the same mechanism of action as carbamazepine and is used to treat the same conditions.

27.     Plaintiff was prescribed and ingested Defendants' TRILEPTAL drug product pursuant to his physician's orders.

28.     After ingesting TRILEPTAL, Plaintiff began to experience a skin rash, itching, and blistering, which was diagnosed as Stevens Johnson Syndrome caused by TRILEPTAL.

29.     DRUG COMPANY DEFENDANTS aggressively marketed TRILEPTAL for expanded indications, including use of TRILEPTAL as a first-line treatment of epilepsy and broad use as an anticonvulsant drug in adult and pediatric populations, and as a mood stabilizer.

30.     Yet, in 2005, the International League Against Epilepsy (ILEA) published guidelines regarding the selection of anticonvulsant for patients as Initial Monotherapy for Epileptic Seizures and Syndromes and found there was no randomized controlled trials to establish the efficacy of carbmazepine for any other seizure type (i.e. absence, atypical absence, myoclonic, atonic, tonic and tonic-clonic seizures.)[1]

---

[1] Glauser, *et al.*, ILAE Treatment Guidelines: Evidence-based Analysis of Antiepileptic Drug Efficacy and Effectiveness as Initial Monotherapy for Epileptic Seizures and Syndromes, *Epilepsia,* 47(7); pp. 1094-1120,

5

31.    The ILEA study reviewed fifty randomized controlled trial designs, seven meta-analysis and information provided to the panel by pharmaceutical companies.[2] Further, the ILEA panel requested that pharmaceutical companies supplement data from any publicly known randomized controlled trial if data were missing from the package inserts of the studied drugs and to provide data concerning any unpublished potentially relevant clinical trials.[3]

32.    The ILEA panel found there was a paucity of adequate studies to support the use of carbamazepine as initial monotherapy and examined five meta-analyses to analyze efficacy and effectiveness of TRILEPTAL for adults with partial-onset seizures and found "no reliable evidence to distinguish TRILEPTAL from Valproate Acid for partial onset seizures and generalized on-set seizures.[4]

33.    The ILEA panel also found that studies were insufficient to support a finding that TRILEPTAL was effective for pediatric use.[5]

34.    Defendants knew from the above studies that carbamazepine (Tegretol the brand which is manufactured by them) shares the same mechanism of action with oxcarbazepine; thus, oxcarbazepine is likewise ineffective in the treatment of seizures in the pediatric population.

---

2006.

[2] *Id.* at 1096.

[3] *Id.* at 1097.

[4] *Id.* at 1094; *See also* Marson, AG, Williamson PR, Clough H. *et al*, Carbamazepine versus valproate monotherapy for epilepsy: a meta-analysis, *Epilepsia*, 2002; 43-505-13.

[5] *Id.* at 1105-1107.

35.    By federal law, the labeling is to include accurate information concerning a drug's active and inactive ingredients, clinical pharmacology, indications, usage, efficacy, contraindications, warnings, precautions and side effects.

36.    Defendants failed to fully, truthfully and accurately communicate the efficacy of TRILEPTAL drug products and intentionally and fraudulently mislead the medical community, physicians, Plaintiff's physicians and Plaintiff about the risks associated with the drug, including but not limited to the risk of SJS associated with the use of the drug.

37.    Defendant caused its Package Insert to be published in the Physician's Desk Reference (PDR)[6] and minimized the risk of Stevens-Johnson Syndrome.

38.    The TRILEPTAL package inserts minimized the risk of Stevens Johnson Syndrome, despite available literature that Defendants should have reported evidencing a statistically significant higher risk for such reactions.

39.    The TRILEPTAL package inserts minimized the risk of SJS in the pediatric population, when the true risk is significantly higher than disclosed by Defendants.

40.    The drug product package inserts were disseminated to Plaintiff's physicians and other members of the medical community.

41.    Defendants fraudulently and aggressively promoted TRILEPTAL drug products to physicians for use in patients, such as Plaintiff, through medical journal advertisements, use of mass mailings, and direct communications, as well as other promotional materials including package inserts, physician desk reference, monographs and patient brochures, leaflets and hand

---

[6] The Physician's Desk Reference is annual pharmaceutical publication.  It contains the contains the "labeling" information on manufacturers drugs and is distributed free of charge (along with semi-annual supplements) to physicians across the United States.

outs as these materials downplayed the significance of the adverse effects of TRILEPTAL drug products and the risk of SJS.

42.  Defendants knew or should have known a significant portion of deaths and severe side effects, described herein, resulted from carbamazepine products and oxcarbazepine and have included African American persons and children who were found to have increased risks of TRILEPTAL SJS and TEN in the medical literature.

*Pharmacogenetics*

43.  In 2001, scientists published a comprehensive list of the human leukocyte antigen alleles and haplotypes in five major racial groups: African Americans; Hispanics; Native Indians; Asians; and Caucasians. Among the listed alleles were *HLA-B\*5701* and *HLA-B\*1502*. Though the former of these alleles was found to exist within each of the five groups, *HLA-B\*1502* was found in African Americans and Asian populations.

44.  In 2002, hypersensitivity syndrome relating to abacavir and identified carriers of the *HLA-B\*5701* allele was identified with the highest odds ratio of association to SJS. The manufacturer of abacavir conducted a large international pharmacogenetic randomized clinical trial, which assisted in determining the proper risk of the drug among various populations. This study demonstrated that screening for *HLA-B\*5701* before introducing abacavir and the exclusion of the patients carrying this allele resulted in the near disappearance of the hypersensitivity syndrome related to this drug, which usually occurred in 5% of the patients treated with abacavir during the first weeks of treatment. This pharmacogenetic test is now routinely used in many different countries before introducing abacavir.

45.  However, during this same period, though it had become known to Defendants that carbamazepine was also associated with SJS, yet no trials or other studies were performed

8

by Defendants directed towards detecting genetic predisposition among patient populations, including screening for *HLA* alleles in patients hospitalized for life-threatening cutaneous ADRs (SJS), nor were studies performed to allow for the identification of additional *HLA* alleles as potent risk factors for TRILEPTAL.

46.     In April of 2004, a case-control association study was published identifying *HLA-B\*1502* as an important genetic risk factor for severe TRILEPTAL-induced cutaneous adverse reactions such as Stevens-Johnson syndrome and toxic epidermal necrolysis. The particular study reported a strong association in Han Chinese between a genetic marker, HLA-B\*1502, and Stevens-Johnson syndrome induced by carbamazepine.

47.     In April of 2006, another study was published reflecting connection between carbamazepine and Stevens-Johnson syndrome. The study was an extension of the earlier reported study again determining that SJS caused by TRILEPTAL was strongly associated with the HLA-B\*1502 gene and appeared phenotype-specific

48.     In August of 2007, another publication reported the association and concluded that HLA-B\*1502 genotyping as a screening tool before prescribing TRILEPTAL could be a valuable tool in preventing TRILEPTAL-induced SJS.

49.     However, even though the availability of performing studies and post marketing surveillance in connection with hypersensitivity to a drug had been established in 2002 with success, and though it have been known within the scientific community that certain ethnic and racial groups were predisposed to having risk factors to injury due to, among other things, genetic factors, Defendants had done nothing including failing to include an appropriate warning in its label nearly four years, if not earlier, of the connection.

50.     Finally, in December 2007, the FDA forced Defendants to add a black-box warning on its carbamazepine (Tegretol) label, recommending testing for the *HLA-B\*1502* allele in patients with Asian ancestry before initiating Tegretol therapy because these patients are at high risk of developing Tegretol induced Stevens-Johnson syndrome.

51.     Yet, Defendants took no action on its TRILEPTAL label, even though it knew or should have known that TRILEPTAL utilizes the same mechanism of action as their drug Tegretol and is used to treat the same condition and the same patient populations, including the pediatric population.

52.     Despite accounts of severe cutaneous reactions and severe side effects including but not limited to Stevens-Johnson Syndrome reported directly to the Defendants, and reports in the literature, the Defendants failed to advise the Plaintiff's physicians and the medical community of the true and accurate risks and regularly represented in advertising and promotional messages to said individuals that the risk same associated with exposure to TRILEPTAL drug products was minimal when in fact it was significantly greater.

53.     The TRILEPTAL drug products were defective due to inadequate pre-marketing and post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injury associated with the drug, Defendants failed to provide adequate warnings to Plaintiff's physicians, Plaintiff, and the medical community who prescribed said drug, and to their patients who were the ultimate consumers of the drug. Yet despite Defendants inadequate post-marketing warnings and instructions to said persons Defendants continued to aggressively promote the drug thereby making Defendants strictly liable for failure to warn.

54.     Defendants' TRILEPTAL drug products are the most dangerous and lethal antibiotic drugs that cause deaths from SJS.

10

55.   Carbamazepine and oxcarbazepine drug products have a greater reporting ratio of SJS than other anticonvulsants yet Defendants' TRILEPTAL drug products have no Black Box Warnings or any specific warnings for these side effects, even though its risk of SJS far exceed other drugs.

56.   Defendants failed to analyze post-marketing data, and in doing so, failed to prevent the excessive number of fatalities and disabling injuries occurring in survivors of SJS.

57.   The data above was available to Defendants before and after they marketed TRILEPTAL to the public.

58.   The labeling for Defendants' TRILEPTAL minimizes the risk of SJS.

59.   Defendants never provided sufficient information regarding the risk of SJS to prescribing physicians or patients, including the plaintiff.

60.   Defendants never disseminated to patients or the medical community appropriate instructions or measures that a patient should undertake if the early symptoms of SJS develop while using its TRILEPTAL products in order to reduce the risk of occurrence of these serious conditions.

61.   Defendants have had ample opportunity to change their labeling to provide adequate warnings and sufficient warnings on the safe use of TRILEPTAL drug products to reduce or avoid the risk of SJS, but failed to act.

62.   Defendants have failed to add adequate information or warning regarding the predisposition of African Americans, Asians and children to SJS from the use of its drug.

63.   Defendants misrepresented and failed to appropriately warn the medical community and patients, including Plaintiff, that use of TRILEPTAL may increase the risk of death, as well as other severe and permanent health consequences such as SJS, thereby placing

11

its profits above the safety of the public.

64. By reason of the foregoing, Plaintiff suffered SJS, a serious injury.

65. Plaintiff has endured and continues to suffer from mental anguish from the knowledge that these fatal injuries were a result of Defendants' wrongful acts and omissions.

66. By reason of the foregoing, Plaintiff has been severely and permanently injured.

67. Plaintiff's use of TRILEPTAL was as prescribed and was in a foreseeable manner.

68. As a direct and proximate result of the use of TRILEPTAL, Plaintiff developed SJS and was hospitalized for treatment of his severe injuries caused by Defendants' TRILEPTAL.

69. The TRILEPTAL that was administered to Plaintiff reached him without substantial change in its condition since it was manufactured or sold.

70. Plaintiff would not have authorized the use of TRILEPTAL had Defendants properly disclosed the risks associated with the product.

71. As a result of Defendants' actions, Plaintiff and his prescribing physicians were unaware, and could not reasonably have known or have learned through reasonable diligence of the risks attendant to the use of TRILEPTAL and that those risks were the direct and proximate result of Defendants' acts and omissions.

72. At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of

12

fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights and hence punitive damages are appropriate.

73. This Complaint seeks redress for damages sustained by Plaintiff resulting from the use of TRILEPTAL, which was prescribed for Plaintiff and manufactured and sold by the Defendants herein.

74. The damages sought herein are for injuries sustained as the direct and proximate result of Defendants' wrongful conduct in connection with the researching, developing, designing, testing, inspecting, assembling, manufacturing, labeling, advertising, licensing, marketing, promoting, selling, packaging, supplying and/or distributing the pharmaceutical product TRILEPTAL.

## COUNT I
## STRICT PRODUCTS LIABILITY

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth.

76. At all relevant times the Defendants were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling TRILEPTAL drug products.

77. Defendants developed, marketed and distributed TRILEPTAL drug products to the general public even after learning of the design and manufacturing defects that threatened the intended use of the drug.

78. TRILEPTAL drug products were defective and unreasonably dangerous and were expected to and did reach Plaintiff without substantial change.

79. At all times mentioned in this Complaint, TRILEPTAL drug products were defective and/or unreasonably dangerous to Plaintiff and other foreseeable users at the time the drugs left the control of the Defendants.

13

80.    Defendants knew or should have known through testing, adverse event reporting, or otherwise, that the drugs created a high risk of bodily injury and serious harm.

81.    The dangerous propensities of TRILEPTAL drug products were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time said Defendants distributed, supplied, or sold the drugs, and not known to ordinary physicians who would be expected to prescribe the drugs for their patients.

82.    TRILEPTAL drug products, as distributed, were defective and unreasonably dangerous inasmuch as the drugs were not accompanied by warnings and instructions that were appropriate and adequate to render the drugs reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of the drugs.

83.    Prior to the manufacturing, sale and distribution of said drug products, Defendants knew that TRILEPTAL drug products were in a defective condition as previously described, and knew that those who were prescribed and took the same would experience, and did experience, severe physical, mental and emotional injuries.

84.    Defendants had prior notice and knowledge from several sources, prior to the date of dispensing of said drug products to Plaintiff, that TRILEPTAL drug products presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such said consumers of said drug were unreasonably subjected to risk of injury or death from the consumption of said drug products.

85.    Despite such knowledge, Defendants for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to warn of the extreme risk of physical injury occasioned by said defects inherent in said TRILEPTAL drug products.

14

86. In order to advance Defendant's own pecuniary interests, Defendants intentionally proceeded with the manufacturing, the sale and distribution, and marketing of TRILEPTAL drug products with knowledge that consumers would be exposed to serious danger.

87. TRILEPTAL drug products were "defective" and "unreasonably dangerous" when the drugs initially were patented, and subsequently when the drugs were promoted and entered into the stream of commerce and were received by Plaintiff, in one or more of the following respects:

(a) At the time the drug left the control of the Defendants the drug was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the drug breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiff's physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seek recovery herein.

(b) TRILEPTAL drug products were not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the drugs left the possession of the Defendants, and that such risks clearly outweighed the utility of TRILEPTAL therapy or its therapeutic benefits.

(c) At the time the drug left the control of the Defendants the drug possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the drug left the possession of the Defendants. Specifically, although the Defendants was well aware that the drug products could potentially cause severe side effects described herein, SJS and TENS, warnings of such adverse health conditions were either not included on the package insert for the drug and/or the warnings were inadequate to inform reasonably prudent physicians and foreseeable users of the risks. The Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of the drug.

(d) The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicate sufficient information on the dangers and safe use of the drug taking into account the characteristics of the TRILEPTAL, and/or the ordinary knowledge common to the physician

15

who prescribes and the consumer who purchases the drug, such as the Plaintiff.

(e)  The drugs manufactured and supplied by the Defendants were further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from TRILEPTAL drug products associated with the use as commonly prescribed, Defendants failed to promptly respond to and adequately warn about SJS to foreseeable users.

(f)  The drugs as manufactured and supplied by the Defendants were further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from the drugs associated with the use as commonly prescribed, Defendants failed to promptly respond to and adequately warn about an increased risk as reported in the medical literature for SJS posed to patients, who were foreseeable users of the drug products.

88.  The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seek recovery.

89.  The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of the drug that caused the damages for which Plaintiff seeks recovery.

90.  The reasonably foreseeable use of the drugs involved substantial dangers not readily recognizable by the ordinary physician who prescribed the drug or the patient, including Plaintiff, who consumed TRILEPTAL drug products.

91.  The Defendants knew that TRILEPTAL drug products were to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that the drugs were not properly prepared nor accompanied by adequate warnings of the dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

16

92.     Plaintiff and Plaintiff physicians did not know, nor had reason to know, at the time of the use of Defendants' TRILEPTAL drug products, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

93.     The above defects caused serious injuries to Plaintiff when the drugs were used in its intended and foreseeable manner, and in the manner recommended by the Defendants and/or in a non-intended manner that was reasonably foreseeable.

94.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

95.     For the above reasons, the Defendants are strictly liable under Illinois product liability law without regard to proof of negligence or gross negligence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT II
## BREACH OF EXPRESS WARRANTY

96.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth.

97.     Defendants' expressly warranted to Plaintiff that TRILEPTAL drug products were safe and effective.

98.     In response to these promises and express statements, Plaintiff and Plaintiff's physicians relied on such affirmations and warranties.

17

99.    TRILEPTAL drug products do not conform to those express representations in light of recently discovered disclosures and information previously withheld by Defendants. Defendants' express warranty through its false statements failed to disclose design, manufacturing and safety defects inherent in the drug.

100.    Defendants breached its warranties of the drug by continuing sales and marketing campaigns highlighting the safety of its TRILEPTAL drug products, while it knew of the design, manufacturing and safety defects and the risk of contracting severe skin reactions, serious side effects as described herein, including SJS.

101.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, including SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT III
## NEGLIGENCE

102.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

103.    Defendants had a duty to exercise the care of an expert in all aspects of the formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing, and sale of their TRILEPTAL drug products to ensure the safety of the drug products

18

and to ensure that the consuming public, including the Plaintiff and Plaintiff's physicians and agents, obtained accurate information and instructions for the use of said drugs.

104.    As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer injury, harm, and economic loss as alleged herein, including permanent and substantial physical injuries, and expenses attributable to said injuries.

105.    Defendants owed a duty toward foreseeable users of TRILEPTAL drug products to exercise reasonable care to ensure that TRILEPTAL drugs were reasonably safe for ordinary and intended uses, and specifically, *inter alia*, to ensure through adequate testing, labeling, and otherwise, that physicians who would be likely to prescribe the products for their patients' use were adequately informed as to the potential effects of using the products in ordinary and foreseeable ways, in particular the risks SJS inherent in such use.

106.    Defendants failed to exercise reasonable care in testing the drug for side effects in ordinary and foreseeable users; and failed to disseminate to physicians information concerning the effects of the drugs, which was accurate, not misleading, and otherwise adequate to enable physicians to make informed choices concerning the use of TRILEPTAL drug products.

107.    Defendants failed to exercise ordinary care in the manufacture, sale, testing, marketing, quality, assurance, quality control and/or distribution of the drugs into the stream of interstate commerce in that Defendants knew or should have known that TRILEPTAL drug products created a foreseeable high risk of unreasonable, dangerous side effects and health hazards.

108.    The dangerous propensities of TRILEPTAL drug products as referenced above, were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time it distributed, supplied, or sold the products, and not known to ordinary physicians who would be expected to prescribe said drugs for Plaintiff and other patients, similarly situated.

109. The information the drug company Defendants and distributors disseminated to physicians concerning TRILEPTAL drug products was, in fact, inaccurate, misleading, and otherwise inadequate, as described above.

110. As a proximate result, Plaintiff suffered grievous bodily injuries and consequent economic and other losses when Plaintiff ingested said drug products, which had been developed, manufactured, labeled, marketed, distributed, promoted and/or sold, either directly or indirectly, by Defendants through third parties or related entities.

111. The Defendants were negligent, and breached duties owed to Plaintiff with respect to TRILEPTAL drug products in one or more of the following respects:

(a) Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Defendants failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of the drugs;

(b) Defendants failed to conduct adequate testing; and

(c) Despite knowledge of hazards, Defendants failed to conduct adequate post-marketing surveillance to determine the safety of the product; and

(d) Despite knowledge of hazards, Defendants failed to adequately warn Plaintiff's physicians or Plaintiff that the use of TRILEPTAL drug products could result in SJS; and

(e) Despite the fact that the Defendants knew or should have known that their TRILEPTAL drug products caused unreasonably dangerous side effects, Defendants failed to adequately disclose the known or knowable risks associated with said drug as set forth above; Defendants willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff safety and/or welfare.

112. As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered

and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

113.    The negligence and the willful and wanton misconduct of the Defendants was a proximate cause of Plaintiff's harms and injuries that Plaintiff suffered and will continue to suffer.

114.    In the alternative, Defendants' acts and omissions and concealment of material facts of the design and manufacturing defects were made with the understanding that patients and physicians would rely upon such statements when choosing TRILEPTAL drug products. Furthermore, the economic damages and physical harm caused by Defendants' conduct would not have occurred had Defendants exercised the high degree of care imposed upon it and Plaintiff therefore pleads the doctrine of *res ipsa loquitur*.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT IV
## MISREPRESENTATION BY OMISSION

115.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

116.    Defendants misrepresented the soundness and reliability of TRILEPTAL drug products to physicians and the general public through promotional and marketing campaigns.

117.    Defendants misrepresented that TRILEPTAL drug products were safe and/or effective when used as instructed, when, in fact, the drugs were dangerous to the health of patients. Defendants continued these misrepresentations for an extended period of time, without disclosing material information.

21

118. Defendants took advantage of the limited opportunity Plaintiff had to discover Defendants' strategic and intentional concealment of the design, manufacturing and safety defects in TRILEPTAL drug products.

119. At the time Defendants promoted and/or sold TRILEPTAL drug products as safe and/or effective, Defendants did not have adequate proof upon which to base such representations, and in fact, knew or should have known that said drugs were dangerous.

120. Defendants concealed these design and manufacturing defects from the public by withholding information pertaining to the inherent design, manufacturing and safety defects and high risks of a severe side effects as described herein, including SJS and/or TENS associated with TRILEPTAL drug products and, instead presented said drugs as safe and reliable.

121. Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to the Plaintiff to induce purchase of TRILEPTAL drug products over other safer alternative drugs on the market.

122. Defendants knew or should have known of the high risk Plaintiff would encounter by unwittingly agreeing to ingest defective and dangerous TRILEPTAL drug products.

123. Defendants failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of said drug and otherwise failed to exercise reasonable care in transmitting information to Plaintiff, Plaintiff's physician, and the public in general.

124. Defendants made the aforesaid representations in the course of Defendants' business as designers, manufacturers, distributors and sellers of TRILEPTAL drug products despite having no reasonable basis for their assertion that these representations were true and/or without having

accurate or sufficient information concerning the aforesaid representations. Defendants were aware that, without such information, it could not accurately make the aforesaid representations.

125.    At the time the aforesaid representations were made, Defendants intended to induce Plaintiff and/or Plaintiff's physicians to rely upon such representations.

126.    Said representations were made with the intent to defraud and deceive Plaintiff and/or Plaintiff's physicians and with the intent to induce Plaintiff and/or Plaintiff's physicians to rely upon the statements and to use the drugs in order to reap the profits from the sale of TRILEPTAL drug products.

127.    Plaintiff and/or Plaintiff's physicians, at the time the representations were made, were unaware of their falsity and believed them to be true. In reasonable reliance thereon by Plaintiff and/or Plaintiff's physicians prescribed and/or distributed TRILEPTAL drug products, and as a result, Plaintiff suffered, and will continue to suffer, injury, harm and economic loss alleged herein.

128.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, including SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT V
## NEGLIGENCE PER SE

23

129.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth.

130.    Defendants falsely and fraudulently represented to Plaintiff's physicians, and through them to Plaintiff and members of the general public that TRILEPTAL drug products were safe and that severe side effects as described herein including SJS and/or TENS were comparatively rare. These representations were, in fact, false. The true facts are that TRILEPTAL drug products are not safe and are dangerous to the health and body of Plaintiff and others similarly situated.

131.    Defendants made representations about the safety and efficacy of TRILEPTAL drug products and its minimal side effects all as set forth herein.

132.    TRILEPTAL drug products cause severe side effects as described herein including SJS and/or TENS far more frequently than represented.

133.    Defendants did not disclose or warn physicians about the actual prevalence of known side effects of their TRILEPTAL drug products.

134.    Defendants misrepresented the safety of said drugs and withheld warnings of the known side effects of said drugs when used as commonly prescribed by physicians.

135.    When Defendants made these representations, Defendants knew that the representations were false. Defendants made these representations with the intent to defraud and deceive Plaintiff's physicians; and, through them to defraud and deceive Plaintiff; and, with the intent to induce Plaintiff and Plaintiff's physicians to act in the manner alleged in this Complaint-- that is to use TRILEPTAL drug products instead of safer alternative pharmaceutical products on the market.

136.    At the time Defendants made the above described representations, and at the time Plaintiff and Plaintiff's physicians took the actions alleged in this Complaint, Plaintiff and

24

Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true. In reliance upon the representations, Plaintiff's physicians were induced to and did prescribe said drugs as described herein and Plaintiff did use said drugs as described herein.

137. If Plaintiff's physicians had known the actual facts Plaintiff would not have been prescribed Defendants' TRILEPTAL drug products and Plaintiff would not have used said drugs.

138. The reliance of Plaintiff and Plaintiff's physicians upon the representations of Defendants was justified.

139. As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, including SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

140. In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. This wrongful conduct was done with the advance knowledge, authorization, or ratification of officers, directors, and/or managing agents of the Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

141. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth.

25

142. Defendants owed a duty to disseminate accurate and adequate information concerning said drugs, and to exercise reasonable care to ensure that it did not, in those undertakings, create unreasonable risks of personal injury to others.

143. Defendants disseminated to physicians, through package inserts, and/or the publication of a monograph, and/or otherwise mediums, information concerning the properties and effects of their TRILEPTAL drug products with the intention that physicians would rely upon that information when making a decision concerning whether to prescribe TRILEPTAL therapy for their patients.

144. Defendants as drug manufacturers and/or distributors, and/or sellers, knew or ought to have realized that they have a duty to ensure that the information accompanying TRILEPTAL drug products is accurate, complete, not misleading, and otherwise adequate.

145. Drug company defendants knew or should have known that they have a duty to monitor medical literature and post marketing adverse events and to report any data affecting the safety of said drugs to the appropriate agency and/or alert the medical community, Plaintiff's physicians, and through them, Plaintiff.

146. Defendants knew or ought to have realized, specifically, that physicians, in weighing the potential benefits and potential risks of using TRILEPTAL and in writing prescriptions for said drugs would rely upon information disseminated by Defendants.

147. Defendants knew or ought to have realized that patients receiving prescriptions for said drugs were written in reliance upon information Defendants disseminated as the manufacturer/distributor of said drugs.

26

148.     Defendants knew or should have known that persons ingesting said drugs would be placed in peril of grievous personal injury if information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

149.     Defendants failed to exercise reasonable care to ensure that the information disseminated concerning the properties and effects of said drugs were accurate and not misleading, and as a result disseminated information that was negligently and materially inaccurate, misleading, and false.

150.     As a proximate and foreseeable result of the negligence on the part of Defendants the Plaintiff suffered grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physicians, in reasonable reliance upon the negligently inaccurate, misleading, and false information disseminated by Defendants, and believing the information to be true, prescribed for the Plaintiff the use of Defendants' TRILEPTAL drug products and Plaintiff ingested, per those prescriptions, said drugs leading to Plaintiff's injuries.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT VII
## FRAUD AND MISREPRESENTATION

151.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

152.     Defendants had actual knowledge of facts, which demonstrated that representations in the package insert, and/or the PDR monograph, and/or literature, and/or other mediums that the Defendants distributed concerning their TRILEPTAL drug products was false and misleading. Defendants had an absolute duty to disclose the true facts regarding the safety of said drugs to physicians and their patients and the medical community, which they negligently failed to do.

27

153. Defendants had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning said drugs, all of which Defendants failed to do.

154. Important information regarding the risk of said drugs was in the exclusive control of Defendants and was exclusively known by Defendants.

155. In the furtherance of Defendants' own interests, Defendants disseminated false information regarding said drugs to physician and Plaintiff and did so knowing that the safety of said drugs depended on the accuracy of that information.

156. Defendants knew and expected that recipients of that information would rely on the information that the recipients would take action based upon the information, and that individuals would be put in peril by such actions and that those individuals would suffer physical harm as a result.

157. Defendants expressly and/or impliedly represented to Plaintiff, Plaintiff's physicians, the medical community, and members of the general public that their TRILEPTAL drugs were safe for use. The representations by Defendants were, in fact, false. The true facts were that the drugs were not safe for use and were, in fact, dangerous to the health and body of Plaintiff.

158. Defendants made the above-described representations with no reasonable grounds for believing them to be true. Defendants did not have accurate or sufficient information concerning these representations and they failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information.

159. The above misrepresentations or omissions were made to Plaintiff, and Plaintiff's physicians, and the medical community, all of whom justifiably and foreseeably relied on those representations or omissions.

160. Plaintiff would not have suffered injuries but for the above misrepresentations or omissions of Defendants.

161. Defendants and Defendants' misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

162. As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT VIII
## FRAUD BY CONCEALMENT

163. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

164. The Defendants, with the intention of deceiving physicians and their patients, and to induce physicians to prescribe, and their patients to ingest, said drugs failed to adequately inform physicians, through package inserts and otherwise, that exposure to TRILEPTAL drug products can lead to SJS but instead represented TRILEPTAL therapy to be safe, said representations were unscientific and false.

29

165.    At all times mentioned in this Complaint, Defendants had the duty and obligation to disclose to Plaintiff and to Plaintiff's physicians the true facts concerning TRILEPTAL drug products, that is, that said drugs were dangerous and defective and caused serious consequences to users, including injuries as described in this Complaint, and the true level of risk involved in prescribing said drugs for the purposes indicated.    Defendants made the affirmative misrepresentations set forth herein to Plaintiff, Plaintiff's prescribing physicians, and the general public prior to the day Plaintiff were first prescribed and used TRILEPTAL while concealing the material facts set forth herein.

166.    At all times mentioned in this Complaint, Defendants had the duty and obligation to disclose to Plaintiff and to Plaintiff's physicians the true facts concerning TRILEPTAL drug products, that is that the use and exposure could cause severe cutaneous reactions and side effects, including SJS.

167.    At all times mentioned in this Complaint, Defendants and its predecessors intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians, and therefore from Plaintiff, with the intent to defraud as alleged in this Complaint.

168.    At all times mentioned in this Complaint, neither Plaintiff nor Plaintiff's physicians were aware of the facts set forth above; however, had Plaintiff and their physicians been aware of the facts set out herein, they would not have acted as they did and would not have utilized TRILEPTAL drug products.

169.    As a proximate result of the concealment or suppression of the facts set forth above, Plaintiff was prescribed and took TRILEPTAL drug products and subsequently became ill, thereby sustaining the injuries and damages as set forth herein.

170.    In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages and to Defendants' wealth, and sufficiently large to be an example to others and to deter Defendants and others from engaging in similar conduct in the future.

171.    The Plaintiff's physicians, in reliance upon the information disseminated by the Defendants, and without knowledge of the undisclosed and knowingly concealed facts, determined that the benefits of prolonged TRILEPTAL therapy outweighed the risks for their patients, the Plaintiff, and prescribed a course of TRILEPTAL therapy for Plaintiff.

172.    As a proximate and foreseeable result of this knowing and fraudulent concealment of material facts on the part of the Defendants, Plaintiff suffered grievous bodily injury and consequent economic and other loss when Plaintiff's physicians, in reliance upon the information disseminated by the Defendants, and in ignorance of the facts concealed from them in those disseminations, prescribed for the Plaintiff the use of said drugs and Plaintiff ingested, per those prescriptions, said drugs, leading to Plaintiff's injuries.

173.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

**COUNT IX**
**VIOLATION OF CONSUMER PROTECTION LAWS**

174. Plaintiff repeats and incorporate by reference the allegations herein above, as if fully set forth.

175. Plaintiff is "consumers" as that term is defined by the Illinois Consumer Fraud Act (Ill. Comp. Stat. Ann. Chapter 815 § 505/1(e)).

176. The Defendants are designers, manufacturers, promoters, marketers, developers, sellers and/or distributors of TRILEPTAL and are "persons" that were engaged in "advertising" and "sale" of TRILEPTAL as those terms are defined by the Illinois Consumer Fraud Act (Ill. Comp. Stat. Ann. Chapter 815 § 815 505/1 (a), (c) and (d).

177. TRILEPTAL is "merchandise" as defined by the Illinois Consumer Fraud Act. (Ill. Comp. Stat. Ann. Chapter 815 § 815 505/1 (b).

178. The purchase and sale of TRILEPTAL is "trade" and "commerce" as defined by the Illinois Consumer Fraud Act (815 § 815 505/1 (f).

179. By reason of the conduct as alleged herein, Defendants violated Consumer Protection laws, by knowingly and intentionally inducing Plaintiffs to use TRILEPTAL through the use of false and/or misleading advertising, representations and statements. TRILEPTAL drug products failed to perform as represented and advertised, and in fact were unsafe.

180. The Defendants induced the Plaintiff and Plaintiff's physicians, through the use of false and/or misleading advertising, representations, and statements, as described above, to use and/or prescribe TRILEPTAL which Defendants manufactured and/or distributed and sold, all in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act which proscribes, among other things:

    a. Engaging in unfair trade practices as defined in the statute by making false and

32

misleading oral and written statements that have the capacity, tendency or effect of deceiving or misleading consumers;

b. Engaging in unfair trade practices as defined in the statute by making representations that TRILEPTAL had a characteristic, ingredient, use or benefit which they did not have, including but not limited to statements concerning the health consequences of the use of drug;

c. Engaging in unfair trade practices as defined in the statute by failing to state material facts, the omission of which deceive or tend to deceive, including but not limited to, facts relating to the health consequences of the use of TRILEPTAL; and

d. Engaging in unfair trade practices as defined in the statute through deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of TRILEPTAL.

181. As a direct and proximate result of Defendants' statutory violations, Plaintiff used TRILEPTAL as prescribed, which Plaintiff would not have used had he known the truth about the dangerous side effects of TRILEPTAL.

182. The Plaintiff purchased and used TRILEPTAL for personal, family or household purposes and suffered ascertainable losses of money as a result of the Defendants' use or employment of the methods, acts or practices described herein.

183. As a direct and proximate cause of the Defendants' acts of consumer fraud, the Plaintiff has suffered ascertainable loss-economic loss that includes the purchases of TRILEPTAL and additional out of pocket healthcare related costs, for which the Defendants are liable to the Plaintiff's for treble Plaintiff's actual damages.

184. By reason of such violations and pursuant to the laws and regulations of this state, Plaintiff is entitled to recover all of the monies paid for the TRILEPTAL drug products; to be compensated for the cost of medical care arising out of the use of TRILEPTAL; together with any and all actual damages recoverable under the law including, but not limited to, past medical

33

expenses, past wage loss, past pain, suffering, disability and emotional distress, and treble damages.

185.    Plaintiff is entitled to recover fees and disbursements, including costs of investigation, reasonable attorneys' fees, and any other equitable relief as determined by this Court.

186.    Defendants distributed, marketed and sold TRILEPTAL in a manner calculated to increase sales of TRILEPTAL drug products and reap resultant profits at the expense of, and in conscious disregard for, the health and safety of Plaintiff.

187.    The conduct of the Defendants undertaken consciously and with notice, evidences a willful, wanton, and conscious disregard for the rights, healthy, and safety of Plaintiff who would be expected to be induced to ingest Defendants' TRILEPTAL drug products leading to grievous, debilitating, and potentially permanent personal injury.

188.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed SJS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; incurred and will continue to incur expenses for medical treatment of Plaintiff's' injuries; suffered and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## COUNT X
## BREACH OF IMPLIED WARRANTIES

189.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

34

190.   The Defendants knew that most physicians who prescribed TRILEPTAL drug products were not aware of the serious side effects as described herein including SJS and/or TENS associated with use of said drugs.   The Defendants also knew that the risks of said side effects were much greater than most physicians realized.  By failing to give adequate warnings about these side effects and the risk of the use that is associated with those side effects, the Defendants breached implied warranties of merchantability and fitness for the ordinary use of said drugs.

191.   At all times mentioned in this Complaint, the Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold TRILEPTAL drug products and prior to the time said drugs were used by Plaintiff, the Defendants impliedly warranted to Plaintiff and to Plaintiff's physicians that the drugs were of merchantable quality and safe and fit for the use for which the drugs were intended.

192.   Plaintiff relied on the skill and judgment of the Defendants in using TRILEPTAL drug products.

193.   TRILEPTAL drug products were not safe and were unfit for their intended use, nor were the drugs of merchantable quality, as warranted by the Defendants, in that the drugs had very dangerous propensities when put to intended use and would cause severe injury to the user. TRILEPTAL drug products were not properly prepared nor accompanied by adequate warnings of the drugs dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.  As a result, TRILEPTAL drug products proximately caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

194.   As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, including SJS and/or TENS and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered

35

and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiff for his injuries.

## DAMAGES

195.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff ingested TRILEPTAL drug products, which ware causally related to and contributed to Plaintiff's injuries.

196.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered extreme emotional distress, anguish, physical injuries, and mental suffering.

197.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff experienced extreme embarrassment, shame, anguish, anxiety, and has sustained a loss of enjoyment of life.

198.    Plaintiff seeks the recovery for past and future special damages, which includes medication, doctor, rehabilitation, therapy, and Plaintiff also seeks general damages in the amount to be determined for the wrongful conduct of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief against Defendants as follows:

199.    For judgment for damages sufficient to compensate for damages, including but not limited to past, present, and future economic expenditures in connection with the injuries sustained by Plaintiff as a result of ingesting Defendants' TRILEPTAL drug products;

200.    For compensatory damages according to proof;

201.    For all applicable statutory remedies provided that assert liability for Defendants'
wrongdoings and improper conduct;

202.    For a disgorgement of profits;

203.    For prejudgment interest, as permitted by law;

204.    For reasonable costs, including attorneys fees as permitted by law;

205.    For all other just and proper relief.

Respectfully Submitted,

BY: _Timothy J. Ashe_____
Timothy J. Ashe
Kralovec, Jambois & Schwartz
60 West Randolph Street, 4th Floor
Chicago, IL 60601
Phone: 312-782-2525
Fax: 312-855-0068
Firm ID: 24797

---AND---

ROBERT L. SALIM
ATTORNEY AT LAW
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998
(Pro Hac to be submitted)

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT B

Firm I.D. #10535

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

JUSTIN ROBERSON, a minor, by and through his )
mother and next friend, ANGELA ROBERSON, )
                                   )
                  Plaintiff, )
                                   )
v.                                    )      Case No. 2011 L 001050
                                   )
NOVARTIS PHARMACEUTICALS CORPORATION, )
and NOVARTIS PHARMACEUTICALS )
CORPORATION D/B/A CIBA PHARMACEUTICALS, )
FORMERLY KNOWN AS SANDOZ INC. AND/OR )
SANDOZ PHARMACEUTICALS CORPORATION, )
                                   )
                  Defendants. )

## NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

TO:     Clerk of the Circuit Court of Cook County, Illinois

               Timothy J. Ashe                     Robert L. Salim
               Kralovec, Jambois & Schwartz        Attorney at Law
               60 West Randolph, 4th Floor         1901 Texas Street
               Chicago , IL 60601                    Natchitoches, LA 71457

        PLEASE TAKE NOTICE that on March 24, 2011, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Defendant Novartis Pharmaceuticals Corporation's Notice of Removal, a true copy of which is attached and hereby served upon you.

                                  Respectfully submitted,

                                  _____
                                  Attorney for Defendant Novartis Pharmaceuticals
                                  Corporation

John A. Roberts
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
(312) 201-2000
Firm I.D. #10535

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing *Notice of Filing Notice of Removal of Action to Federal Court* on Timothy J. Ashe, Kralovec, Jambois & Schwartz, 60 West Randolph, 4th Floor, Chicago , IL 60601 and Robert L. Salim, Attorney at Law, 1901 Texas Street, Natchitoches, LA 71457, Attorneys for Plaintiff, via Ordinary U.S. Mail, from 225 West Wacker Drive, Chicago, IL 60606, this 24th day of March 2011.

_____
Attorney for Defendant Novartis Pharmaceuticals
Corporation

John A. Roberts
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive - Suite 3000
Chicago, IL 60606-1229
(312) 201-2000
Firm I.D. #10535

# EXHIBIT C

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

JUSTIN ROBERSON, a minor, by and through )
His mother and next friend, ANGELA ROBERSON, )
                          )      Case No.
         Plaintiff, )
                          )
v.                          )
                          )
NOVARTIS PHARMACEUTICALS )    **2011L001050**
CORPORATION, and NOVARTIS )    **CALENDAR/ROOM E**
PHARMACEUTICALS CORPORATION )    **TIME 00:00**
D/B/A CIBA PHARMACEUTICALS, FORMERLY )    **PI Motor Vehicle**
KNOWN AS SANDOZ, INC. AND/OR SANDOZ )
PHARMACEUTICALS CORPORATION, )
                          )
         Defendants. )

### AFFIDAVIT OF DAMAGES
### PURSUANT TO SUPREME COURT RULE 222(b)

    The undersigned being first duly sworn upon oath, deposes and states that he is the

attorney representing the Plaintiff in the above entitled cause of action seeking money damages

or collection of taxes and states that this cause of action does exceed $50,000.00.

                                        _Timothy J. Ashe_

**SUBSCRIBED AND SWORN** to before
me on this 10th day of February, 2011.

_Michelle Schiff_
NOTARY PUBLIC

Kralovec, Jambois & Schwartz
60 West Randolph St., 4th Floor
Chicago, IL 60601
Ph: 312-782-2525
Fx: 312-855-0068
Attorney ID: 24797

> OFFICIAL SEAL
> MICHELLE SCHIFF
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:04/21/12